# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| I.E.S.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MOISES BECERRA, et al.,<br><br>　　　　　　Defendants. | Case No.  23-cv-03783-BLF<br><br>**ORDER GRANTING IN PART WRIT OF HABEAS CORPUS**<br><br>[Re: ECF No. 17] |

Petitioner I.E.S. filed a Petition for Writ of Habeas Corpus against Respondents U.S. Immigration and Customs Enforcement ("ICE") San Francisco Field Office Director Moises Becerra, Secretary of the Department of Homeland Security ("DHS") Alejandro Mayorkas, Acting ICE Director Patrick Lechleitner, and Attorney General Merrick Garland (collectively "Respondents"). ECF Nos. 1 ("Pet."), 17 ("Am'd Pet."). I.E.S. argues that his 16-month detention in ICE custody violates his substantive and procedural due process rights under the Fifth Amendment. ECF No. 17 ¶¶ 1–5. Respondents have filed a return, ECF No. 18 ("Ret."), and I.E.S. has filed a traverse, ECF No. 19 ("Traverse"). After careful consideration of the briefs and evidence, the Court GRANTS I.E.S.'s petition for a writ of habeas corpus and ORDERS that an IJ conduct a bond hearing within 10 days of this Order.

## I.   BACKGROUND

### A.   I.E.S.'s Upbringing and Criminal Charges

I.E.S. is a native and citizen of Mexico and was born in Cuernavaca, Mexico in 1981. ECF Nos. 17-2 ("I.E.S. Decl.") ¶ 1; 18-1 ("Abad Decl.") ¶ 5. The son of a nurse and factory worker, I.E.S. grew up in poverty. *See* I.E.S. Decl. ¶¶ 3–7. In January 2000, when I.E.S. was 18 years old, he entered the United States. *Id.* ¶ 9. I.E.S. entered without being inspected, admitted, or paroled

1  by an immigration officer.  Abad Decl. ¶ 5; ECF No. 18-2.

2    After arriving in the United States, I.E.S. went to live with his uncles in Chico, California.
3  I.E.S. Decl. ¶ 10.  He worked several jobs, including on a farm and at a rice mill.  *Id.* ¶¶ 11–12.
4  While he worked at a rice factory, I.E.S. became friends with the other factory workers, many of
5  whom where members of the Sureños gang.  *Id.* ¶ 13.  Although I.E.S. initially resisted his friends'
6  efforts to recruit him into the Sureños, he eventually relented.  *Id.* ¶ 14.  I.E.S. got in several
7  physical fights with members of the rival Norteños gang, including several that involved firearms.
8  *Id.* ¶ 16.  To protect himself, I.E.S. accepted a pistol from a friend.  *Id.*  During his membership in
9  the Sureños, I.E.S. also started using methamphetamine.  *Id.* ¶ 17.  I.E.S. has many tattoos,
10  including several that identify him as a member of the Sureños.  *Id.* ¶¶ 16, 20, 30

11    In 2003, I.E.S. was arrested for possession of a controlled substance and driving under the
12  influence of alcohol and/or drugs, for which he served 2 days in jail and 36 months on probation.
13  ECF No. 18-2 at 8.  In 2004, I.E.S. was arrested twice for possession of a controlled substance
14  (cocaine), and once for driving under the influence of alcohol.  *Id.*; ECF No. 18-3.  I.E.S. served
15  two consecutive 8 month sentences for his possession offenses.  ECF No. 18-3.  In 2005, I.E.S.
16  was convicted of transportation of a controlled substance (methamphetamine) and possession of a
17  firearm by a felon—I.E.S. was sentenced to 4 years and 8 months in prison.  ECF No. 18-2 at 8.

18    In 2004, I.E.S. met his wife at a *quinceañera* party.  I.E.S. Decl. ¶ 18.  They married in
19  2005.  *Id.*

20    **B.** **Prison Rehabilitation and Removal to Mexico**

21    While in prison in Soledad, I.E.S. decided to denounce his membership in the Sureños, and
22  was placed in protective custody.  I.E.S. Decl. ¶ 22.  I.E.S. was then transferred to Avenal State
23  Prison, where he took classes in electronics and passed a test to transfer to a prison with better
24  programming.  *Id.* ¶ 23.  After I.E.S. was transferred, he worked cleaning rooms and in a kitchen
25  as a dishwasher and lead cook.  *Id.*

26    While I.E.S. was serving his prison sentence, ICE issued a Notice to Appear and initiated
27  removal proceedings against I.E.S.  ECF No. 18-7.  On April 2, 2008, I.E.S. entered into a
28  stipulated order of removal, and was ordered removed to Mexico by an Immigration Judge ("IJ").

Abad Decl. ¶ 7; ECF No. 18-7. I.E.S. was removed to Mexico on June 10, 2008. Abad Decl. ¶ 8; ECF No. 18-9.

Relocation in Mexico was dangerous for I.E.S. and his wife. His hometown of Cuernavaca was now plagued by gang and cartel violence. I.E.S. Decl. ¶ 28. In 2009, I.E.S. was attacked by gang members with his mother and sister present. *Id.* ¶¶ 35–37. One gang member pulled out a knife and, after I.E.S. and his family retreated into their home, the gang members broke the windows and continued to threaten them. *Id.* Although I.E.S. and his family called the police, the police did not assist them. *Id.* ¶ 39. After this attack, I.E.S. and his family moved from house to house, but gang members continued to attack and threaten him. *Id.* ¶¶ 44–57.

Around January 2009, I.E.S.'s wife returned to the United States to give birth to the couple's first daughter. *Id.* ¶ 34. In 2010, with a second daughter on the way, I.E.S. decided to return to the United States. *Id.* ¶ 57.

### C. Return to the United States, Detention, and Immigration Proceedings

In 2010, I.E.S. reentered the United States without being inspected, admitted, or paroled by an immigration officer. I.E.S. Decl. ¶ 58; Abad Decl. ¶ 8. In 2021, I.E.S. and his wife opened a smoke shop in Sonoma, California. I.E.S. Decl. ¶ 59. In August 2021, I.E.S. was arrested for robbery and receipt of stolen property. The charges were dismissed on June 6, 2022. ECF No. 17-1 at 62–69. The arrest prompted DHS to take I.E.S. into ICE custody on or about May 3, 2022. Abad Decl. ¶ 9.

Since his arrest, I.E.S. has been detained at Golden State Annex, a private immigration detention facility operated by GEO Group, Inc. in McFarland, California. Am'd Pet. ¶ 34. I.E.S. explains that the conditions at Golden State Annex are severe. An officer once "tried to enforce sexually-motivated pat-downs." I.E.S. Decl. ¶ 64. I.E.S. also participated in a month-long hunger strike to protest mistreatment in the facility. I.E.S. was one of the last people striking. *Id.* ¶ 65. After the strike, I.E.S. was taken into medical segregation, where he was mocked, force-fed, kept in sweaty clothes in a freezing cold room, and was not given water. *Id.* ¶¶ 67–68.

On the day that I.E.S.'s detention began, he was placed in removal proceedings before the Van Nuys immigration court. ECF No. 18-2 at 2. I.E.S. first requested a custody redetermination,

3

which the IJ denied, finding that he is subject to mandatory detention under 8 U.S.C. § 1226(c). ECF No. 18-11. I.E.S.'s individual calendar hearing was originally scheduled on August 9, 2022. ECF No. 17-1 at 73. He was initially granted two continuances to allow his counsel time to prepare. *Id.* At the continued hearing on October 6, 2022, I.E.S. was not able to complete his testimony due to audio connection issues, which led to another continuance to October 28, 2022. *Id.* At the further continued hearing, I.E.S.'s counsel moved for another continuance because the expert's son was hospitalized the day before. *Id.* The hearing was continued a final time to November 16, 2022, where I.E.S. rested his case. *Id.* On December 21, 2022, the IJ denied I.E.S.'s requests for withholding of removal and relief under the Convention Against Torture. ECF No. 18-12. I.E.S. appealed to the Board of Immigration Appeals ("BIA"). On June 16, 2023, the BIA sustained I.E.S.'s appeal and remanded the case back to the IJ for further proceedings. ECF No. 18-14.

I.E.S. continues to be detained at Golden State Annex. On February 16, 2023, I.E.S. filed a written administrative request to ICE seeking release from custody as a matter of prosecutorial discretion. Am'd Pet. ¶ 38. On May 6, 2023, ICE verbally denied release due to I.E.S.'s past crimes. *Id.* ¶ 40.

## II.   JURISDICTION

The Court first considers whether jurisdiction lies within the district. ICE is currently detaining I.E.S. at the Golden State Annex facility in McFarland, California. Golden State Annex is a private facility that falls within the area of responsibility of the San Francisco Filed Office of ICE Enforcement and Removal Operations. Respondent Becerra is the Field Office Director of ICE's San Francisco Field office. Am'd Pet. ¶ 17.

In *Rumsfeld v. Padilla*, the Supreme Court applied the "immediate custodian rule" to a habeas petition filed by a U.S. citizen detained in military custody in South Carolina. 542 U.S. 426, 430–32 (2004). The immediate custodian rule is the long held "default rule" that the proper respondent to a habeas petition challenging present physical confinement "is the warden of the facility where [a] prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435–39. However, *Padilla* refused to decide who the proper

4

1  respondent is in the immigration detention context, *id.* at 436 n.8, and it did not address the proper
2  respondent when a detainee is confined in a facility run by an entity other than the federal
3  government.  Following *Padilla*, courts in this district have followed the rule that Judge Chhabria
4  articulated in *Saravia v. Sessions*:  "[A] petitioner held in federal detention in a non-federal facility
5  pursuant to a contract should sue the federal official most directly responsible for overseeing the
6  contract facility."  280 F.Supp.3d 1168, 1185 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v.*
7  *Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Pham v. Becerra*, No. 23-CV-01288-CRB, 2023
8  WL 2744397, at *4 (N.D. Cal. Mar. 31, 2023) (following *Saravia*).

9        Respondents contend that jurisdiction does not lie within this district for four reasons.
10  First, Respondents contend that under established Supreme Court and Ninth Circuit precedent,
11  jurisdiction lies only in the district of confinement—in this case, the Eastern District of California.
12  Ret. at 4 (first citing *Padilla*, 542 U.S. at 443, 447; then citing *Lopez-Marroquin v. Barr*, 955 F.3d
13  759 (9th Cir. 2020)).  I.E.S. responds that Respondents overread *Padilla* and Ninth Circuit
14  precedent and that the consensus of courts in this district have found jurisdiction over petitions
15  filed by petitioners at Golden State Annex.  Trav. at 1–3.  Second, Respondents contend that the
16  proper respondent need not be a federal official.  Ret. at 7 (citing *Brittingham v. United States*, 982
17  F.2d 378, 379 (9th Cir. 1992)).  I.E.S. responds that *Brittingham* is inapposite because it is a pre-
18  *Padilla*, non-immigration appeal that did not address the particular factual situation in this case.
19  Trav. at 3.  Third, Respondents contend that, even if the proper respondent is a federal official,
20  Acting Assistant Field Office Director Nancy Gonzalez and Deputy Field Office Director Orestes
21  Cruz—who are located in the Eastern District of California—are the "immediate custodian[s]" for
22  purposes of jurisdiction.  Ret. at 8.  I.E.S. responds that Becerra, rather than Gonzalez or Cruz,
23  controls the custody decisions related to I.E.S.  Trav. at 4.  Finally, Respondents contend that
24  questions of the proper respondent and jurisdiction are separate questions, and the district of
25  confinement rule still applies.  Ret. at 8.  I.E.S. responds that this reading of the law conflicts with
26  *Padilla*.  Trav. at 4.

27        The Court will first address Respondents' first, second, and fourth arguments—all of
28  which suggest that controlling precedent from the Supreme Court or the Ninth Circuit require the

5

1    Court to find that jurisdiction does not lie in this district. This Court and other courts in this
2    district have repeatedly and consistently rejected Respondents' arguments. *See, e.g.*, *Pham*, 2023
3    WL 2744397, at *3 (collecting cases); *Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL
4    2400981, at *2 (N.D. Cal. June 11, 2021) (collecting cases).
5            Contrary to Respondents' suggestions, there is no controlling authority on the
6    jurisdictional question presented in this case. Respondents rely on *Padilla*'s invocation of the
7    district of confinement rule to argue that jurisdiction lies in the Eastern District of California, but it
8    is not clear that *Padilla* requires that the district of confinement rule apply to this case. *Padilla*
9    acknowledged that jurisdiction requires "nothing more than the court issuing the writ [to] have
10   jurisdiction over the custodian." 542 U.S. at 442 (quoting *Braden v. 30th Jud. Cir. Ct. of*
11   *Kentucky*, 410 U.S. 484, 495 (1973)). But *Padilla* explicitly refused to decide the proper
12   respondent in the immigration context. *Id.* at 436 n.8. Moreover, to the extent that *Padilla*
13   invoked the district of confinement rule, it did so based on the assumption that "[i]n habeas
14   challenges to *present* physical confinement, . . . the district of confinement is *synonymous* with the
15   district court that has territorial jurisdiction over the proper respondent. This is because, as we
16   have held, the immediate custodian rule applies to core habeas challenges to present physical
17   custody." *Id.* at 444. Thus, not only did *Padilla* decline to apply the district of confinement rule
18   to the immigration detention context, but it plainly does not address this case, where the district of
19   confinement is *not* synonymous with the district that has territorial jurisdiction over the proper
20   respondent.
21           The Ninth Circuit cases cited by Respondent as applying the district of confinement rule to
22   immigration detention cases also do not address this question. Respondents primarily rely on
23   *Lopez-Marroquin v. Barr*, in which the Ninth Circuit construed an emergency motion to remand
24   pursuant to the All Writs Act as a petition for a writ of habeas corpus, which it transferred to the
25   district court where the petitioner was being detained. 955 F.3d 759 (9th Cir. 2020). However,
26   the Ninth Circuit did not analyze or expressly address the jurisdictional issue raised in this case.
27   "Courts in this district repeatedly have held, both before and since *Lopez-Marroquin*, that *Padilla*
28   does not extend to cases such as this one where the immediate custodian lacks any actual authority

6

1    over the immigrant detainee." *Domingo v. Barr*, No. 20-CV-06089-YGR, 2020 WL 5798238, at
2    *2 (N.D. Cal. Sept. 29, 2020). Similarly, the unpublished Ninth Circuit decisions cited by
3    Respondents do not address why the designated jurisdiction was appropriate, let alone which
4    jurisdiction is appropriate when an immigration detainee is confined in a private facility operated
5    under a government contract. *See, e.g.*, *Chavez v. Barr*, No. 20-70461, 2020 WL 13017244, at *1
6    (9th Cir. Apr. 30, 2020) ("[W]e construe petitioner's motion for release from detention as a
7    petition for a writ of habeas corpus and transfer it to the Eastern District of California, where
8    petitioner is being held at the Yuba County Jail."); *Birru v. Barr*, No. 19-72758, 2020 WL
9    12182460, at *1 (9th Cir. Apr. 30, 2020) (same).

10   Finally, the rule in *Saravia* is not contrary to *Brittingham*. The Ninth Circuit in
11   *Brittingham* considered only two possible respondents: a U.S. Marshal and the warden of a state
12   detention facility. 982 F.2d at 379. But the court in *Brittingham* had no occasion to consider who
13   the proper respondent is between the warden of a contract facility and the federal official
14   overseeing the contract facility. Moreover, the Court finds the analysis of *Saravia* persuasive—
15   federal officials are best situated not only to "produce the body of [the petitioner] before the
16   court," but to "defend federal interests." *Saravia*, 280 F.Supp.3d at 1186 (alteration in original)
17   (quoting *Padilla*, 543 U.S. at 435).

18   Turning to Respondents' third argument, the Court finds that Gonzalez and Cruz, who are
19   federal officials, are nonetheless improper respondents for purposes of jurisdiction. The Court
20   concurs with the approach of other courts in this district, which have repeatedly held that lower-
21   level ICE officials are not appropriate respondents. *See, e.g.*, *Pham*, 2023 WL 2744397, at *4
22   (holding that Becerra, not Gonzalez or Cruz, is the proper respondent); *Ameen v. Jennings*, No. 22-
23   CV-00140-WHO, 2022 WL 1157900, at *4 (N.D. Cal. Apr. 19, 2022) (rejecting the argument that
24   lower-level ICE officers are not appropriate respondents and finding jurisdiction lies in the
25   Northern District). Gonzalez and Cruz work for the San Francisco Field Office and report to
26   Becerra. ECF No. 18-15 ("Gonzalez Decl.") ¶ 7. It is Becerra, not Gonzalez or Cruz, that has
27   ultimate authority over I.E.S.'s physical custody. *See* 8 C.F.R. § 236.1(d)(1); 8 C.F.R. § 241.4(a).
28   As such, Becerra is the proper respondent.

7

1    Because Becerra is the proper respondent and he is based in the Northern District, the

2    Court has jurisdiction over I.E.S.'s petition and may grant relief pursuant to 28 U.S.C. § 2241.

**III.    LEGAL STANDARD**

28 U.S.C. § 2241 grants federal courts the authority to issue writs of habeas corpus to individuals in custody if that custody is a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 is the proper vehicle through which to challenge the constitutionality of a non-citizen's detention without bail. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F.Supp.3d 963, 967–68 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). Declaratory and injunctive relief are proper habeas remedies. *See id.* at 970 (enjoining ICE from re-arresting petitioner without a bond hearing); *see also N.B. v. Barr*, 2019 WL 4849175, at *7 (S.D. Cal. Oct. 1, 2019) (citing cases).

**IV.    DISCUSSION**

The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful temporary, or permanent." *Id.* at 693. Detention, including that of a non-citizen, violates due process if there are not "adequate procedural protections" or "special justification[s]" sufficient to outweigh one's "'constitutionally protected interest in avoiding physical restraint.'" *Id.* at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)); *Demore*, 538 U.S. at 516–17.

Federal immigration law authorizes the Attorney General to arrest and initially detain a non-citizen who has entered the United States and is believed to be removable. 8 U.S.C. § 1226(a). Certain subsets of non-citizens are subject to mandatory detention. *See id.* § 1226(c) ("The Attorney General shall take into custody any alien who [falls into one of several categories] when the alien is released, without regard to whether the alien is released on parole, supervised

8

release, or probation . . . ."); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 837–38 (2018).  The Attorney General may not release a non-citizen detained under § 1226(c) pending the outcome of their deportation proceedings unless release is necessary for witness protection, which is not at issue in this case. *See id.* § 1226(c)(2).

I.E.S. argues that his prolonged detention under 8 U.S.C. § 1226(c) violates his substantive and procedural due process rights.  Am'd Pet. ¶¶ 44–48.  He requests that the Court order his immediate release or that the Court, rather than an IJ, hold a hearing in which the government has the burden to show by clear and convincing evidence that I.E.S. is a flight risk and/or danger to the community.  *Id.* ¶¶ 79–82, 98–105.  Respondents argue that mandatory detention under § 1226(c) is constitutional, and I.E.S.'s mandatory detention does not violate his substantive or procedural due process rights.  Ret. at 4–21.  Should the Court order a bond hearing, Respondents argue that the hearing should be before an IJ with the burden of proof on the petitioner.  *Id.* at 21–23.

### A.     Substantive Due Process

I.E.S. argues that his prolonged civil immigration detention violates his substantive due process and that this violation requires his release from physical custody.  Am'd Pet. ¶¶ 50–55.  I.E.S. argues that because he is not a flight risk or danger to the community, the length of his detention is excessive in relation to its non-punitive purpose.  *Id.* ¶¶ 64–71.  I.E.S. also argues that less restrictive alternatives exist to serve any governmental interest and the conditions at Golden State Annex are worse than criminal custody.  *Id.* ¶¶ 72–74.  Respondents argue that mandatory detention under § 1226(c) is facially constitutional and serves the government's legitimate interest in ensuring a noncitizen's appearance for removal proceedings and preventing the noncitizen from committing further offenses.  Ret. at 9–10.  Respondents further argue that, to the extent that I.E.S.'s detention has been "prolonged," the delay has been due to his own litigation decisions.  *Id.* at 11.

Respondents are correct that in *Demore v. Kim*, the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), recognizing that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process" that serves the valid governmental purpose of mitigating the risks that certain noncitizens in deportation

proceedings would constitute a flight risk or a threat to the community.  538 U.S. at 521–23.  *Demore* stands for the proposition that detention pursuant to § 1226(c) is generally not punitive because it serves a valid governmental purpose.  However, *Demore* does not directly address the issue in this case:  Whether § 1226(c) *as applied* to I.E.S. is punitive and thus unconstitutional.  Indeed, the Supreme Court has explicitly left open the possibility that a noncitizen may bring an as-applied challenge to their detention under § 1226(c).  *See Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges.").

Thus, the Court must consider whether the circumstances of I.E.S.'s detention violate his substantive due process rights.  Substantive due process prohibits civil detention that is punitive in purpose or effect.  *See Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (requiring that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed" (quotation marks omitted) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972))).  Detention that is excessively or unreasonably prolonged may be punitive.  *See United States v. Salerno*, 481 U.S. 739, 748 (1987) (noting that there is a "point at which detention in a particular case might become excessively prolonged, and therefore punitive").

The Court finds *Martinez Leiva v. Becerra* instructive.  In that case, Judge Breyer addressed an argument substantially similar to I.E.S.'s argument—Martinez Leiva, who had been detained at Golden State Annex for 21 months, argued that "his detention ha[d] *become* punitive because he d[id] not pose a risk of flight or a danger."  *Martinez Leiva v. Becerra*, No. 23-CV-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023).  Similarly, Martinez Leiva argued that "continued detention [wa]s excessive in relation to the government's interest, given alternatives like ICE's Intensive Supervision Appearance Program."  *Id.*  Judge Breyer rejected these arguments, acknowledging that Martinez Leiva "might be correct.  But that is what bond hearings are for. . . . It is correct only if *he* is correct that he poses no risk (or a manageable risk) of flight or danger, something that he has not yet had the opportunity to prove."  *Id.*  Judge Breyer further declined to conclude that "the duration of Martinez Leiva's detention, in and of itself, exceeds the bounds of substantive due process."  *Id.* at *6 (discussing *United States v. Torres*, 995

10

F.3d 695, 709–10 (9th Cir. 2021)). Like Martinez Leiva, I.E.S. argues that his 16-month detention has become punitive because he does not pose a flight risk or a danger to the community—pointing to his family ties, his financial ties to California, the strong possibility that he will succeed in his petition for review, the fact that his criminal history is of nonviolent offenses, and his rehabilitation. Am'd Pet. ¶¶ 65–71. Although I.E.S. might be correct that he does not pose a flight risk or danger to the community, he has not yet had the opportunity to have a neutral arbitrator evaluate whether the government could prove that he poses such a risk. Similarly, I.E.S.'s argument that his prolonged detention is excessive in light of alternatives like the Intensive Supervision Appearance Program ("ISAP") and the conditions at Golden State Annex, *id.* ¶¶ 72–73, is an argument that I.E.S. should have an opportunity to prove at a bond hearing.

Finally, I.E.S.'s petition suggests that courts have found shorter periods of confinement violate substantive due process. *Id.* ¶¶ 76–78. But I.E.S. has not pointed to any case law finding so in this context. Indeed, the overwhelming majority of cases challenging prolonged detention under 8 U.S.C. § 1226(c) assert *procedural*, rather than *substantive*, due process challenges. *See, e.g.*, *Pham*, 2023 WL 2744397, at *4; *Perera*, 2021 WL 2400981, at *3. Moreover, to the extent that I.E.S. relies on the Ninth Circuit's decision in *United States v. Torres*, 995 F.3d 695 (9th Cir. 2021), that decision not only analyzed the question in a different context, but the Ninth Circuit ultimately concluded that detention for 21 months did not violate due process. *See id.* at 709–10.

As such, the Court DENIES I.E.S.'s petition to the extent that it argues that I.E.S.'s prolonged detention violates his substantive due process rights.

### B. Procedural Due Process

I.E.S. argues that he is entitled to a bond hearing on two bases. First, he argues that any detention exceeding 6 months is presumptively unconstitutional without an individualized bond hearing. Am'd Pet. ¶¶ 56–60, 84–85. Second, he argues that the balance of factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), require a bond hearing in his case. Am'd Pet. ¶¶ 61–62, 86–97. Respondents argue that no binding precedent supports a bright-line 6-month rule. Ret. at 14–16. Respondents also argue that *Mathews* does not apply to mandatory detention under § 1226(c), and, in the alternative, the *Mathews* factors do not require an additional hearing in this

11

1    case. *Id.* at 21.

2          The Court first addresses whether it should adopt a bright-line rule that detention exceeding 6-months is "presumptively unconstitutional without an individualized bond hearing." Am'd Pet. ¶ 57. I.E.S. does not cite to any controlling authority for the proposition that detention exceeding 6 months is presumptively unconstitutional. Indeed, the cases on which I.E.S. primarily relies raised "serious constitutional" concerns but applied the canon of constitutional avoidance to construe 8 U.S.C. § 1231(a)(6) as conferring a statutory right to a bond hearing. *See Zadvydas*, 533 U.S. at 699; *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). In the absence of controlling precedent, the Court will follow the majority of courts in this district and decline to adopt a bright-line 6-month rule. *See, e.g.*, *Martinez Leiva*, 2023, WL 3688097, at *7 (collecting cases); *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *7 (N.D. Cal. Apr. 6, 2020) (declining to adopt a 6-month rule); *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (same); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2018 WL 4849684, at *3 (N.D. Cal. Oct. 4, 2018) ("Petitioner has thus not show a likelihood of success on his claim that detention under 1226(c) beyond six months without a bond hearing is per se unreasonably prolonged."); *but see Rodriguez v. Nielsen*, No. 18-CV-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (acknowledging that "there is not controlling precedent for this Court to follow," but adopting a 6-month rule).

          The Court next addresses whether the *Mathews* factors apply here. Respondents argue that because the Supreme Court and the Ninth Circuit have suggested that *Mathews* does not apply to all procedural due process claims, *Mathews* should not apply to claims that prolonged detention under § 1226(c) violates procedural due process. Ret. at 16–17. However, this argument simply acknowledges that there is no controlling authority on this issue. In the absence of controlling authority, the Court finds persuasive that the Ninth Circuit and its sister circuits have applied the *Mathews* test in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases). Moreover, other courts in this district have applied the *Mathews* factors to habeas petitions challenging prolonged detention under § 1226(c). *See, e.g.*, *Martinez Leiva*, 2023 WL 3688097, at *7; *Perera v. Jennings*, 598 F.Supp.3d 736, 745 (N.D. Cal. 2022);

12

*Bent*, 2020 WL 1677332, at *7. The Court will follow the weight of authority and apply from *Mathews* to determine what the "specific dictates of due process" require in this case.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quotations omitted). *Mathews* lays out three factors courts must consider in determining the extent of the process due: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

      **i.    Private Interest**

The Court finds that I.E.S. has a significant private interest in "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. "The private interest here—freedom from prolonged detention—is unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). This "overwhelming interest" persists "because 'any length of detention implicates the same' fundamental rights." *Perera*, 2021 WL 2400981, at *4 (quoting *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020)). In fact, I.E.S.'s private interest is heightened in light of the significant length of time (16 months) he has been detained and his strong desire to return to his family.[1] Am'd Pet. ¶ 92; *Martinez Leiva*, 2023 WL 3688097, at *7 (noting that a petitioner's private interest was heightened by the length of confinement and his desire to rejoin his family).

The government argues that I.E.S.'s private interest is minimized because "Petitioner's time in detention is in large part due to his own litigation choices." Ret. at 19. However, "[t]he

---

[1] Although I.E.S. also argues that his conditions of confinement heighten the private interest at stake, Am'd Pet. ¶¶ 90–91, he fails to point to any authority finding that conditions of confinement heighten the private interest for purposes of the *Mathews* test. *Cf. Lopez v. Garland*, 631 F.Supp.3d 870, 879 (E.D. Cal. 2022) (noting that conditions of confinement "are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing").

1 duration and frequency of these requests do not diminish his significant liberty interest in his
2 release or his irreparable injury of continued detention without a bond hearing." *Hernandez*
3 *Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023)
4 (citing *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020)).

          **ii.    Risk of Erroneous Deprivation**

6       The Court also finds that the risk of an erroneous deprivation of the liberty interest is
7 significant. Although the Court will not decide the ultimate question of whether I.E.S. should be
8 granted bond, the Court is persuaded that I.E.S. has at least established that he will likely not be
9 found to be a flight risk or a danger to the community at a bond hearing. For example, I.E.S. has a
10 wife and two daughters in California, I.E.S. Decl. ¶¶ 57–58; he owns a business in California, *id.*
11 ¶ 59; it has been 18 years since his last criminal offense, ECF No. 18-3 at 2; and he has denounced
12 his gang membership, I.E.S. Decl. ¶ 22. However, to date, no neutral decisionmaker has
13 considered and weighed this evidence. The IJ denied I.E.S.'s custody redetermination, finding
14 that he is subject to mandatory detention under § 1226(c). ECF No. 18-11. When I.E.S. filed a
15 written administrative request with ICE seeking release as a matter of prosecutorial discretion, it
16 was denied without written explanation. Am'd Pet. ¶¶ 38, 40. Thus, the risk of erroneous
17 deprivation is high without a neutral decisionmaker reviewing I.E.S.'s evidence to determine if
18 release on bond pending removal is warranted.

19       Respondents argue only that there is no risk of erroneous deprivation because I.E.S. is
20 subject to mandatory detention under 8 U.S.C. § 1226(c). Ret. at 19 (citing *Demore*, 538 U.S. at
21 518). But Respondents' citations to *Demore* are inapposite because, as the Court noted above,
22 *Demore* did not address the issue in this case.

23           **iii.    Government's Interest**

24       The government interest in I.E.S.'s detention pending removal *without a bond hearing* is
25 low. Respondents argue that the government has an interest in effectuating the removal of
26 noncitizens. Ret. at 20. Contrary to Respondents' argument, that interest, although significant, is
27 not at stake here—instead, it is the much lower interest in detaining I.E.S. pending removal
28 without a bond hearing. To the extent that Respondents argue that the government has an interest

14

in ensuring that I.E.S. does not flee removal or pose a danger to the community, whether I.E.S. actually poses such a risk is an argument that Respondents may make at the bond hearing. "Requiring the government to provide [I.E.S.] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera*, 2021 WL 2400981, at *5.  Indeed, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).  Finally, the government will not face any significant additional administrative burdens to hold an individualized bond hearing.

\*       \*       \*

Balancing the *Mathews* factors, the Court finds that I.E.S.'s prolonged detention without a bond hearing violates his right to procedural due process and on this basis, GRANTS I.E.S.'s petition.  The two questions that remain for the Court to consider are whether the Court or an IJ should hold the hearing and who bears the burden of proof.

**C.     Whether the Bond Hearing Should Be Held by the Court or an IJ**

I.E.S. argues that the Court, rather than an IJ, should hold the bond hearing.  Am'd Pet. ¶¶ 98–104.  He argues that because the habeas statute permits district courts to hear and determine facts and precedents requiring a hearing before an IJ were based on statutory requirements, "[n]othing requires the Court to leave determination of the constitutional propriety of I.E.S.'s detention to [an IJ]." *Id.* ¶ 101.  Respondents argue that the weight of authority requires that an IJ hold the bond hearing.  Ret. at 21–22.

The Court agrees with Respondents.  Even if I.E.S. is correct that the Court has the authority to hold a bond hearing, the more prudent course is to allow an IJ to make determinations about I.E.S.'s risk of flight or danger to the community and eligibility for ISAP.  *See Mansoor v. Figueroa*, No. 317CV01695GPCNLS, 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program

15

such as ISAP."); *Lopez*, 631 F.Supp.3d at 882 (declining to order immediate release and instead ordering a bond hearing before an IJ). Thus, the Court will order an IJ to conduct the bond hearing.

### D. Burden of Proof at the Bond Hearing

I.E.S. argues that at the bond hearing, DHS should bear the burden of justifying continued confinement by clear and convincing evidence. Am'd Pet. ¶ 105 (citing *Singh*, 638 F.3d at 1203). Respondents argue that I.E.S. should bear the burden of proof at the bond hearing because similar statutory provisions place the burden on the government and the Supreme Court has never required the government to bear the burden of proof. Ret. at 22–23. To the extent that I.E.S. relies on *Singh*, Respondents argue that *Singh* has always required the detainee to bear the burden of proof and the portions of *Singh*'s holding that place the burden on the government have been called into question. *Id.* at 23 (citing *Rodriguez-Diaz*, 53 F.4th at 1196).

The Court finds that the government should bear the burden of proof by clear and convincing evidence. In *Singh,* the Ninth Circuit held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." 638 F.3d at 1203. While the Ninth Circuit was considering the burden of proof in the context of a *Casas* hearing—held after a non-citizen has faced "prolonged detention while their petitions for review of their removal orders are pending"—the Court finds that the Ninth Circuit's reasoning applies equally here, contrary to Respondents' arguments. It would be "improper to ask [I.E.S.] to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant." *Id.* at 1203–04 (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)). To the extent that *Rodriguez Diaz* might have called into question *Singh*'s holding as it applies to § 1226(c), *Rodriguez Diaz* was limited to § 1226(a) cases and specifically declined to consider whether *Singh* remains good law in § 1226(c) cases. *See Rodriguez-Diaz*, 53 F.4th at 1202 & n.4. Finally, courts in this district confronted with similar issues have continued to place the burden of proof on the government even after *Rodriguez Diaz*. *See, e.g.*, *Martinez Leiva*, 2023 WL 3688097, at *9; *Pham*, 2023 WL 2744397, at *7; *Perera*, 598 F.Supp.3d at 746–47.

16

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner I.E.S.'s Petition for Writ of Habeas Corpus is DENIED with respect to his argument that his prolonged detention violates his substantive due process rights.

2. Petitioner I.E.S.'s Petition for Writ of Habeas Corpus is GRANTED with respect to his argument that his prolonged detention without an individualized hearing violates his procedural due process rights. The Court ORDERS an IJ to conduct a bond hearing within 10 days of the date of this Order. At the bond hearing, the government must prove by clear and convincing evidence that continued detention is warranted or release I.E.S.

Dated: September 27, 2023

_____
BETH LABSON FREEMAN
United States District Judge

17